UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

GARY J. SENCZYSZYN and
ROSE I. SENCZYSZYN,

        Debtors.

Case No.  10-11586
Bankr. No.  09-49868

_____/

MICHIGAN DEPARTMENT OF TREASURY,

        Appellant,

v.

GARY J. SENCZYSZYN and
ROSE I. SENCZYSZYN,

        Appellees.

_____/

**OPINION AND ORDER AFFIRMING
BANKRUPTCY COURT'S OPINION AND ORDER**

The court in this appeal is presented with two questions of law.  First, which section or sections of the Bankruptcy Code govern how to characterize a "straddling" tax claim, specifically whether it is a post-petition claim under the statutory scheme enacted by Congress for chapter 13 bankruptcies.  Second, if 11 U.S.C. § 1305 governs, the court must decide at what time a straddling tax claim "become[s] payable" as that phrase is used in that section.

**I.  BACKGROUND**

The essential facts of this matter are not in dispute.  Debtor-Appellees Gary and Rose Senczyszyn filed a 2008 joint tax return with the State of Michigan on February

14, 2009, calculating a tax due in the amount of $1,900. They then filed a petition for relief pursuant to chapter 13 of the Bankruptcy Code on March 31, 2009, and a chapter 13 plan followed on April 15, 2009, the same day their already-filed tax return was due. The plan included Appellant Michigan Department of Treasury (listed as "State of Michigan") as a claimant with a $1,900 claim based on taxes due for income earned in 2008. Appellees also filed a Schedule E on April 15, 2009, which listed Appellant as a priority creditor to be paid $1,900 for 2008 state income taxes. The plan was confirmed by the bankruptcy court in a September 19, 2009, order.

Appellant did not object to the plan by the June 23, 2009, deadline. Nor did Appellant file a proof of claim by the September 27, 2009, deadline for governmental creditors. As a result, Appellees filed a proof of claim on Appellant's behalf on October 8, 2009, under 11 U.S.C. § 501(c) and Federal Rule of Bankruptcy Procedure 3004.

Instead of participating in the plan, on February 12, 2010, Appellant filed an objection to that proof of claim, arguing that its claim is a post-petition, rather than pre-petition, claim because Appellees' tax return was not due until April 15, 2009. The bankruptcy court denied the objection on April 7, 2010. Appellant appeals that order.

This appeal presents only a question of statutory interpretation: whether the statutory scheme for chapter 13 bankruptcies renders a straddling tax[1] claim a post-petition claim subject to § 1305(a)(1).

---

[1] The court adopts the term "straddling tax" from *In re Hight*, 434 B.R. 505 (W.D. Mich. 2010), to describe the claim at issue here. That opinion defines a straddling tax claim as "a claim or debt for taxes which are owed for a tax year ending prior to the bankruptcy petition being filed, but for which a tax return or payment of the tax itself is not due until after the bankruptcy petition is filed." 434 B.R. at 507.

2

## II. STANDARD

In reviewing a bankruptcy appeal, the district court accepts as correct the bankruptcy court's findings of fact, unless they are clearly erroneous.  Fed. R. Bankr. P. 8013; *see In re Wingerter*, 594 F.3d 931, 935-36 (6th Cir. 2010).  The bankruptcy court's conclusions of law are reviewed *de novo*.  *In re Wingerter*, 594 F.3d at 935-36.  Issues of statutory interpretation are conclusions of law and are reviewed *de novo*.  *United States v. Springer*, 609 F.3d 885, 889 (6th Cir. 2010); *In re Westfall*, 599 F.3d 498, 501 (6th Cir. 2010).

## III.  DISCUSSION

The court will affirm the bankruptcy court's opinion and order overruling Appellant's objection, but will do so on different grounds.

### A. Statutory Scheme

Like many of the other courts that have considered the issue, the court finds that the meaning of "become payable" in § 1305 controls whether Appellant's straddling tax claim is a pre-petition or post-petition claim.

Navigating the Bankruptcy Code often presents a challenge and sometimes seems to require a topographical map.  Chapter 5 of Title 11 of the United States Code contains certain definitions and procedures which are generally applicable to bankruptcy filings under chapters 7, 11, 12, and 13.  11 U.S.C. § 103(a).  Title 11 U.S.C. § 501 provides that a creditor may file a proof of claim, but if the creditor does not timely file such a proof of claim, the debtor may file the proof on the creditor's behalf.  11 U.S.C. § 501(a)-(c).

> A claim of a kind specified in section 502(e)(2), 502(f), 502(g), 502(h) or 502(i) of this title may be filed under subsection (a), (b), or (c) of this section the same as if such claim were a claim against the debtor and had arisen before the date of the filing of the petition.

11 U.S.C. § 501(d).  Relevant here is § 502(i), which states:

> A claim that does not arise until after the commencement of the case for a tax entitled to priority under section 507(a)(8) of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

Appellant's state income tax claim is entitled to priority under § 507(a)(8) because it is an unsecured claim of a governmental unit for an income tax of a taxable year that ended before the petition was filed and which meets other certain specified criteria.  11 U.S.C. § 507(a)(8)(A).  A claim is allowed if proof is filed and a party in interest does not object.  11 U.S.C. § 502(a).

Section 1305 of Title 11, entitled "Filing and allowance of postpetition claims," provides in relevant part:

> (a) A proof of claim may be filed by any entity that holds a claim against the debtor—
>
>> (1) for taxes that become payable to a governmental unit while the case is pending; . . .
>> . . . .
>
> (b) Except as provided in subsection (c) of this section, a claim filed under subsection (a) of this section shall be allowed or disallowed under section 502 of this title, but shall be determined as of the date such claim arises, and shall be allowed under section 502(a), 502(b), or 502(c) of this title, or disallowed under section 502(d) or 502(e) of this title, the same as if such claim had arisen before the date of the filing of the petition.

4

Subsection (c) is inapplicable to tax claims. Chapter 5 applies to chapter 13 cases. 11 U.S.C. § 103(a). Chapter 13, and thus § 1305, applies only in a chapter 13 case. 11 U.S.C. § 103(i).

To summarize, a pre-petition tax claim is one filed under § 501, and is so named because it "arise[s] before the date of the filing of the petition." 11 U.S.C. § 501(d); *see* 11 U.S.C. § 101(10). Claims that arise after the petition is filed, so-called "post-petition claims," generally are not addressed in bankruptcy. *United States v. Ripley (In re Ripley)*, 926 F.2d 440, 443 (5th Cir. 1991) (citing 5 Collier on Bankruptcy ¶ 1305.01[1] (L. King ed., 15th ed. 1988)). As with any rule, there are exceptions. Tax claims that arise after the commencement of a case may be included in a bankruptcy pursuant to § 502(i). In addition, in chapter 13 cases, proofs of claim for those taxes that "become payable . . . while the case is pending" may be filed under § 1305(a)(1). While pre-petition claims arise in any type of bankruptcy, for numerous types of claims, and proof thereof may be filed by various parties in interest, post-petition claims under § 1305 are at issue only in chapter 13 bankruptcies, comprise only two narrow classes of claims, and proof thereof may be filed only by the creditor.

In passing § 1305, Congress carved out for chapter 13 bankruptcies a narrow exception to the claim allowance procedures generally applicable in all bankruptcies. *See* S. Rep. No. 95-989, at 140 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5926. Thus, the bankruptcy court erred in finding that § 1305 need not be considered in the case at hand. In coming to that conclusion, the bankruptcy court held that

> it is not necessary for the Court in this case to try to resolve the split in cases construing § 1305, because § 1305 does not control the issue in this case. Section 1305(a)(1) gives an option to governmental units to

> consider whether they are treated more favorably by filing a proof of claim for taxes that become payable post-petition while a Chapter 13 case is pending, or not.  That makes perfect sense for the taxes based upon income earned post-petition by debtors, since many Chapter 13 plans run as long as five years.  Then, at their choosing, § 1305(a)(1) permits governmental units to file a proof of claim for those post-petition taxes.  But that section does not determine whether a claim is pre-petition or post-petition for purposes of filing and allowance under §§ 501 and 502.  Section 1305 solely governs proofs of claims filed by entities other than a debtor, and if the claim is for taxes, § 1305(a)(1) governs only if the proof of claim is filed by a governmental unit for taxes that become payable while a case is pending.  It is unnecessary for this Court to consider whether or not a governmental unit may hypothetically file a proof of claim under § 1305 when the proof of claim that is the subject of the objection in this case was not filed by a governmental unit, was not filed under § 1305, and is based upon a right to payment that is plainly rooted in the pre-petition relationship between the Debtors and the State of Michigan, based upon the income earned by the Debtors during 2008.

*In re Senczyszyn*, 426 B.R. 250, 258 (Bankr. E.D. Mich. 2010).  However, Appellant was not required to file a proof of claim in order to argue that § 1305 applies; after all, Appellant reads that statute to say that only it, and not Appellees, was permitted to file a proof of claim, and it consciously declined to do so.  Appellant can therefore logically base an objection on § 1305.  If that statute is given the construction for which it argues, Appellant's objection would have to be sustained, as Appellees could not have filed a proof that was not permitted under the statute, and Appellant would not be required to file such a proof.

The case law contains two strands of thought that attempt to reconcile the general provisions of chapter 5 with the language contained in § 1305.  The first view is that § 1305 bars debtors from filing proofs of claim for the types of post-petition claims contemplated by that statute.  The second, illustrated by the bankruptcy court's holding, is that § 1305 does not determine which claims are pre- or post-petition, but instead

6

allows creditors to file claims deemed to be post-petition by chapter 5. *See id.* (holding § 1305 does not affect determination of pre- and post-petition claims under §§ 501-502); *see also In re Hight*, 434 B.R. 505, 508-10 (W.D. Mich. 2010) (relying on the bankruptcy code's definition of "creditor" and the "interplay of sections 501(c), 502(i), 507(a)(8), and 1322(a)(2)" to hold that there is no "strict dichotomy between prepetition and postpetition claims" and therefore § 1305(a)(1) does not control straddling tax claims). This latter view neglects the canon of *lex specialis derogat legi generali*, which instructs that the specific provisions of a statute, in this case those of chapter 13, govern the general provisions, in this case those of chapter 5. *See, e.g.*, *Morton v. Mancari*, 417 U.S. 535, 550-51 (1974) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment."); *United States v. Perry*, 360 F.3d 519, 535 (6th Cir. 2004) ("One of the most basic canons of statutory interpretation is that a more specific provision takes precedence over a more general one."). Thus, in passing § 1305(a)(1) into law, Congress created an exception to the general means of distinguishing pre-petition claims from post-petition claims, and of filing proofs of claim as set forth in chapter 5.

The bankruptcy court's reasons for avoiding interpretation of § 1305 do not withstand scrutiny. First, the court said that since "Debtors in this case do not rely upon § 1305 of the Bankruptcy Code as the authority for the proof of claim that they filed on behalf of the State of Michigan," and instead rely on § 501(c) and its counterpart Rule 3004, the court need not look to § 1305. 426 B.R. at 255. But if Congress created in § 1305 a specific exception to the procedures utilized under chapter 5 for certain types of claims, including § 501(c), then the court must look to that specific exception in

determining whether the Appellees were permitted to file a proof of claim at all. In other words, § 1305(a)(1) may bar a debtor's right to file a proof of claim notwithstanding §§ 501-502.

"Second," the court wrote, "there is nothing in § 1305 that provides a basis to disallow a proof of claim filed by a debtor on behalf of a creditor under § 501(c) of the Bankruptcy Code." *Id.* at 256 (footnote omitted). However, this statement is not entirely accurate, because § 1305(a) begins: "A proof of claim may be filed by any entity that holds a claim against the debtor . . . ." By stating "any entity that holds a claim *against the debtor*" may file a proof of claim, 11 U.S.C. § 1305(a) (emphasis added), Congress barred *debtors* from filing a proof of such claim as would be the normal practice under § 501(c). *See, e.g.*, *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 283 (6th Cir. 2010) (applying maxim of *expressio unius est exclusio alterius*). The effect of § 1305 would be severely mitigated if a debtor were permitted to circumvent the provision by filing a proof of claim under chapter 5. Recognizing this, courts have found that a debtor may not file a proof of claim for a post-petition claimant. *See United States v. Ripley (In re Ripley)*, 926 F.2d 440, 443 n.12 (5th Cir. 1991) ("[T]he code does not authorize a debtor to file a claim for postpetition debts on behalf of the claimant."); *In re Weisel*, 400 B.R. 457, 472 (Bankr. W.D. Pa. 2010) ("[P]ostpetition creditors cannot be forced to participate in a Chapter 13 plan, although they may elect to do so voluntarily."), *aff'd*, 428 B.R. 185 (W.D. Pa. 2010); *In re Jones*, 381 B.R. 555, 558 (Bankr. M.D. Fla. 2007) ("Courts that have considered § 1305(a) have consistently held that the section grants to postpetition claimants the choice of either filing a Proof of Claim and participating in the debtor's plan, or not filing a Proof of Claim and allowing their claim to pass the bankruptcy

unaffected."); *see also* 2 Nancy C. Dreher & Joan N. Feeney, Bankruptcy Law Manual § 13:27 (5th ed. 2010) ("The debtor may not file a proof of claim on behalf of a postpetition claimant, and if the claimant does not file a claim, the claim passes through the debtor's bankruptcy unaffected."). An explicit instruction to the bankruptcy court requiring it to disallow such a claim is unnecessary to reach that result.

The bankruptcy court's final reason, that § 1305 "does not define what is and is not a post-petition tax claim," 426 B.R. at 256, is incorrect, because, as is explained above, § 1305 is directed to post-petition claims of a certain kind defined with the subsections of § 1305(a). To construe the statute otherwise would be both awkward and strained, as a court would be forced to look to a judicially-created test, such as the "fair contemplation" or conduct tests, to determine the types of claims to which § 1305 applies, rendering the language used by Congress in § 1305(a) virtually meaningless.[2] *See generally In re Grossman's Inc.*, 607 F.3d 114, 121-25 (3d Cir. 2010) (en banc) (explaining tests used to determine when a claim arises). Such a construction would ignore the statutory context and violate the canon of *noscitur a sociis*; it would also avoid the decided preference of courts to give statutory language meaning wherever

---

[2] The *Hight* court observed that § 1305 is not rendered entirely meaningless by allowing debtors to rely on chapter 5 for straddling tax claims, as it would still apply to later tax claims which are sure to arise during the several years a typical bankruptcy is pending, but not to the initial, straddling claim. 434 B.R. at 509; *see Senczyszyn*, 426 B.R. at 258. While that is an entirely possible result, this court does not think such a reading gives the statute its intended meaning. First, the *Hight* reading, while preserving a domain for § 1305, renders "become payable" meaningless as it defers a distinction between pre- and post-petition claims to chapter 5, which led the bankruptcy court here to take up the fair contemplation test. Second, if chapter 5 trumps § 1305, it appears that a debtor relying on § 502(i) and § 501(c) would always be able to file a proof of claim, even for later-arising tax claims.

possible. *See, e.g.*, *Duncan v. Walker*, 533 U.S. 167, 175 (2001); *Day v. James Marine, Inc.*, 518 F.3d 411, 417 (6th Cir. 2008) (quoting *Walker v. Bain*, 257 F.3d 660, 667 (6th Cir. 2001)) ("[W]e expect '[e]very word in the statute' to have 'meaning,' and . . . we try to 'give effect to all the words to avoid an interpretation which would render words superfluous or redundant' . . . ."); *Perry*, 360 F.3d at 537; *see also Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976) (quoting T. Sedgwick, The Interpretation and Construction of Statutory and Constitutional Law 98 (2d ed. 1874)) (explaining that the specific statute governs the general "'in order that its words shall have any meaning at all.'"). The court is further persuaded that the choice of "become payable" over "arise" in subsection (a)(1) was not a mere slip of the pen, because the latter term is utilized in subsection (a)(2), directly juxtaposed to "become payable."

For these reasons, the court finds that Congress used the phrase "become payable" to distinguish the post-petition from the pre-petition in this narrow class of tax claims.

### B. "Become Payable"

The handful of courts that have decided the issue of whether a straddling tax claim is a pre- or post-petition claim appear to have split. Courts have followed at least three different rules, finding the relevant date on which taxes "become payable" to be either the end of the tax year, the date the tax return was *actually* filed, or the date the tax return was due.

The first approach is illustrated in *Joye v. Franchise Tax Bd. (In re Joye)*, 578 F.3d 1070 (9th Cir. 2009). The debtors there filed a petition under chapter 13 on March 7, 2001, and their plan was confirmed on May 18, 2001. 578 F.3d at 1072. The

Franchise Tax Board, the taxing authority for the State of California, did not file a proof of claim before the filing deadline.  *Id.*  The debtors filed their year 2000 tax return on October 15, 2001, which was timely under California law, but did not pay the tax due at the time of filing.  *Id.* at 1072-73.  On March 4, 2004, the debtors were discharged from bankruptcy after completion of their plan.  *Id.* at 1073.  When the Board attempted to collect the 2000 taxes, the debtors took the State to the bankruptcy court, which rejected the Board's argument that § 1305 allowed the tax obligation to survive discharge.  *Id.*  The district court reversed the bankruptcy court, finding the Board did not have adequate notice of the bankruptcy proceedings.  *Id.*

The Ninth Circuit reversed in turn.  The court there found that construction of the term "payable" controlled the types of claims to which § 1305 applies.  *Id.* at 1075-77.  It rejected the reasoning of the Fifth Circuit in *United States v. Ripley (In re Ripley)*, 926 F.2d 440 (5th Cir. 1991), discussed below, and adopted that of the Tenth Circuit Bankruptcy Appellate Panel in *Dixon v. IRS (In re Dixon)*, 218 B.R. 150 (B.A.P. 10th Cir. 1998).  It summarized the reasoning in *Dixon* thus:

> Reading the word "payable" in conjunction with the Bankruptcy Code's definitions for "claims" and "debts," respectively, the panel reasoned that the word is best construed to refer "to a time before the last permissible day for paying taxes."  [*Dixon*, 218 B.R. at 152.]  This construction is confirmed, the panel held, by the legislative history of the Bankruptcy Code, which contains the statement, "Section 1305(a) provides for the filing of a proof of claim for taxes and other obligations *incurred* after the filing of the chapter 13 case."  *Id.* at 153, quoting S. Rep. No. 95-989, at 140 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5926 (emphasis added in *Dixon*).
>
> . . . .
>
> [T]he panel in *Dixon* rightly stated that Chapter 13 of the Code is generally concerned with satisfying or discharging "claims" against a given debtor.

11

> *Dixon*, 218 B.R. at 152, citing 11 U.S.C. §§ 1322, 1325 & 1328. A "claim" is broadly defined as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). This broad definition supports *Dixon*'s conclusion that the term "payable," which is used to define a certain class of claims, refers to a time before the creditor's right to payment matures into a legally enforceable prerogative.

*Id.* at 1075-76. The court then cited with approval Collier on Bankruptcy's comparison of § 502(i) with § 1305(a)(1) to support the conclusion that the time of incurring a tax obligation, rather than the time for payment, is determinative of the construction of "payable" and the applicability of § 1305. *Id.* at 1076 (quoting 8 Collier on Bankruptcy ¶ 1300.71[10] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.)). The court rejected the Board's arguments that the use of "payable" should be construed according to the use of that or similar terms in other statutes, such as the Internal Revenue Code or the California Revenue and Tax Code. Finally, it rejected the argument that the Board did not have adequate notice. *Id.* at 1077-81.

The second and third approaches—using the date the return is actually filed or the date the return is due—were discussed by the court in *Ripley*, though the court was not clear as to which of the two approaches it adopted.[3] *Ripley* concerned the quarterly estimated tax payments owed by a self-employed oral surgeon and his wife. 926 F.2d at 441-42. The debtors did not make estimated tax payments in 1987, but filed a chapter 13 petition in November of that year. *Id.* at 442. The Internal Revenue Service ("IRS") failed to file a proof of claim before the deadline. *Id.* The debtors filed a tax

---

[3] At least one bankruptcy court in this district has found *Ripley* persuasive. *See In re Turner*, 420 B.R. 711 (Bankr. E.D. Mich. 2009).

return in May 1988, after which the IRS filed a proof of claim pursuant to § 1305. *Id.* The debtors objected to that proof on the basis that three quarters[4] of their 1987 tax obligation was a pre-petition claim. *Id.*

In its construction of § 1305, the Fifth Circuit looked first to a dictionary definition, noting that

> "payable" means not only "[c]apable of being paid" but also "justly due" and "legally enforceable." The latter of these is the only reasonable meaning to be affixed to the word as it is used in section 1305. Black's continues, "A sum of money is said to be payable when a person is under an obligation to pay it. Payable . . . normally means that the debt is payable at once."

*Id.* at 444 (quoting Black's Law Dictionary 1128 (6th ed. 1990)). *Ripley* cites several opinions that have adopted such a meaning of "payable," *id.* at 444 n.13, and relies on the Uniform Commercial Code and the Internal Revenue Code for confirmation of that meaning, *id.* at 444. Thus, the *Ripley* court concluded, "Congress intended to refer to those taxes that come due during the pendency of the case; in other words, taxes that have 'become payable' are those that *must be paid* now." *Id.* at 444 (emphasis in original); *see Turner*, 420 B.R. at 714.

But the *Ripley* court was less clear about when "now" is. The court wrote the taxes "became payable on April 15, 1988, when their tax return was due," 926 F.2d at 444, and concluded "that the taxes in question became payable when the final tax return for the year was required to be filed," *id.* at 449. Yet a different part of the opinion states the taxes "became payable" when the debtors actually filed their return. *See id.*

---

[4] Three of the four estimated tax payment periods for 1987 elapsed prior to November, when the debtors filed their chapter 13 petition.

at 445 & n.19.  In examining *In re Pennetta*, 19 B.R. 794 (Bankr. D. Colo. 1982)—where the tax return was filed before the petition was filed, which in turn was before "the IRS assessed the tax and filed a proof of claim"—the court wrote, "*Pennetta* demonstrates that our conclusion that the taxes become payable when the return is filed is a two-edged sword.  Although it happens to favor the government in the instant case, it will not do so in all cases."  *Id.*  Thus, while the *Ripley* court rejected the notion that the taxes became payable as soon as they had been incurred, it did not distinguish between the date when the return is due from the date when the return is filed, as that distinction would not have made a material difference in the case.

The court finds that taxes "become payable" in the meaning of § 1305 at the end of a taxable period, typically a year, consistent with *Joye*, for four reasons.

First, where the plain meaning of a statute is clear, that meaning controls.  While a difference in judicial thinking on the same (or very similar) statutory point might indicate the statute on its face is ambiguous, the court cannot find much space for ambiguity.  The court does not agree with the *Ripley* court's reading of Black's Law Dictionary that "justly due" and "legally enforceable" are "the *only* reasonable meaning[s]" to be ascribed to "payable."  *See Ripley*, 926 F.2d at 444 (emphasis

added).  The Ninth Edition of Black's adopts a somewhat more narrow concept of "payable" than does the Sixth Edition.[5]

> **payable,** *adj.* (14c) (Of a sum of money or a negotiable instrument) that is to be paid.  ● An amount may be payable without being due.  Debts are commonly payable long before they fall due.

Black's Law Dictionary 1243 (9th ed. 2009).

There is no ambiguity regarding this definition, and it comports with the court's understanding of the common usage of the word "payable."  Two other factors weigh in favor of this meaning.  Congress chose the phrase "become payable" rather than "become due and owing" or "must be paid." The court is confident Congress understood the difference in meaning between these phrases.  In addition, the court takes judicial notice of the procedures used by the Michigan Treasury in collecting income taxes.  Even though a tax return is not *due* until the April 15 following the taxable year, when a taxpayer files a return before that date and encloses payment, the Treasury will not wait until April 15 to negotiate the taxpayer's check.  Instead, the Treasury deposits the check immediately.  If the amount is later determined to be incorrect, a refund or a bill will be issued.  In common parlance, if payment is proffered and accepted, and the check cashed, one could accurately say only that the tax had been "paid."  And that which was "paid" must have been payable, that is, "capable of being paid."

---

[5] Appellant rightly points out that it was a definition more akin to that cited by the *Ripley* court than the one in the current dictionary that was in force in 1978 when § 1305 was written and became law.  Of course, dictionary definitions are not binding precedent, although they serve to inform how people understand words at a given time.  It is interesting to note that even the earlier edition of Black's cited by *Ripley* and Appellant leads with the definition "capable of being paid," and that over time, Black's has settled on the definition provided herein as that which is commonly understood.

If it were not for Appellant's assertions to the contrary and case law in support of that position, the court would be satisfied that the analysis need go no further. But, as noted above, numerous courts have rejected the plain meaning analysis and looked to other factors beyond the text of the statute itself.

To the extent that the statute is ambiguous, the court may look to persuasive extrinsic authority, including "other statutes, interpretations by other courts, legislative history, policy rationales, and the context in which the statute was passed" to discern congressional intent.[6] *Brilliance Audio, Inc. v. Haights Cross Commc'ns, Inc.*, 474 F.3d 365, 371-72 (citing *Garcia v. United States*, 469 U.S. 70, 76 n.3 (1984)). As noted in *Joye* and *Dixon*, what congressional record there is supports the notion that "become payable" in § 1305 references tax obligations that are "incurred" during the pendency of a bankruptcy case, meaning after the chapter 13 petition has been filed. Returning to Black's:

> **incur,** *vb.* (15c) To suffer or bring on oneself (a liability or expense).

Black's Law Dictionary 836 (9th ed. 2009).

While the "suffering" implied in paying one's taxes may not occur until near the ides of April, the tax liability was brought on by earning income during the preceding year. Tax liability is *not* incurred only after the tax year is over but before the tax has

---

[6] Legislative history would ordinarily be focused on Committee reports. Justice Jackson explained: "Resort to legislative history is only justified where the face of the Act is inescapably ambiguous, and then I think we should not go beyond Committee reports, which presumably are well considered and carefully prepared. . . . [T]o select casual statements from floor debates, not always distinguished for candor or accuracy, as a basis for making up our minds what law Congress intended to enact is to substitute ourselves for the Congress in one of its important functions." *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 395-96 (1951) (Jackson, J., concurring).

been paid. Similarly, *Joye*'s and *Dixon*'s reliance on § 101(5)(A) and § 502(i) bolsters this view. The congressional record supports the *Joye* reading of § 1305—which, in this court's opinion, is much less a reading than it is "the only reasonable meaning to be affixed to the word as it is used in section 1305." *See Ripley*, 926 F.2d at 444.

Moreover, in construing a statutory phrase, similar terms in unrelated statutes do not necessarily have the same meaning. *United States ex rel. Chicago, New York & Boston Refrigerator Co. v. Interstate Commerce Comm'n*, 265 U.S. 292, 295 (1924). Thus, where the meaning of § 1305 is clear on its face and supported by its own statutory context and relevant legislative history, the court declines the invitation to look to the Internal Revenue Code or state provisions to interpret the statutory meaning. *See Joye*, 578 F.3d at 1078 (quoting *Dixon*, 218 B.R. at 152) ("As aptly stated in *Dixon*, 'words used in the Bankruptcy Code do not necessarily mean the same thing they might mean in the Internal Revenue Code.'").

Finally, the ambiguity of the *Ripley* court in its own holding evinces the practical problem with departing from the natural reading of the statute and adopting the view that taxes "become payable" when the return is due. Are taxes "due" on April 15, the deadline for filing a return in most jurisdictions? Or are they "due" when the return is filed, whether that filing comes early or late? In the case of estimated taxes, they will be due long before a return must be filed. In that case, should the due date for the return control over the due date for payment of the tax? While such interpretive problems are not insurmountable, brightline rules are more workable and are therefore generally favored. The court's holding here therefore not only comports with the plain meaning of

the statute and the available evidence of Congress's intent, but also provides the most pragmatic solution.

Based on its plain meaning, the court holds that taxes "become payable" under § 1305(a)(1) at the conclusion of the tax period for which they are due, or in other words, when they are theoretically determinable. This will often, but not always, mean that taxes "become payable" when a return may be filed and when payment may be made. In cases where the taxable period is the calendar year, for example, taxes "become payable" at 12:00 a.m. on January 1, after that year has concluded.

Applying this holding to the facts of this case does not require much ink. Appellees' tax year ended at the very beginning of January and they filed their chapter 13 petition in March. Their income taxes "bec[a]me payable" before the petition was filed, and so the claim based on that tax obligation is a pre-petition claim. Section 1305 does not apply. As Appellant failed to timely file a proof of claim, Appellees were permitted, under Rule 3004 and § 501(c), to file the proof of claim on their behalf. Appellant's objection was properly denied.

### IV.  CONCLUSION

Accordingly, IT IS ORDERED that bankruptcy court's opinion and order is AFFIRMED.

  s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  February 11, 2011

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 11, 2011, by electronic and/or ordinary mail.

s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\10-11586.SENCZYSZYN.BankruptcyAppeal.jmp.wpd